## THE FARRAGUT.[1]

### WRIGHT et al. v. THE FARRAGUT.

*(District Court, S. D. New York. June 8, 1888.)*

COLLISION—BETWEEN STEAMERS—ATTEMPTING TO CROSS BOW—DELAY IN SIG-NALING.

The steam-boat M. was coming with the ebb-tide down the Brooklyn side of the East river, preparatory to rounding to her slip on the New York shore. The Fulton ferry-boat F., on her way from New York to Brooklyn, about two-thirds of the way across from the New York shore, and 200 or 300 feet further from the Brooklyn shore than the M., was headed nearly up river, the F. nearly straight down. The F., by a signal of two whistles, directed the M. to go to the left between her and the Brooklyn shore; but the latter, when about 250 yards distant from the F., ported her wheel to round ahead of the ferry-boat. As soon as this was observed by the ferry-boat, she backed, but her bow struck the port side of the M., causing the injury for which this suit was brought. *Held,* that the whole fault was the M.'s; that each having the other on her own starboard side, when only some 250 yards apart, the M. should have kept her course, and was to blame for unnecessarily and unjustifiably attempting to cross the bows of the ferry-boat, and for not signaling much earlier, if that had been her intention; and that the latter was without fault, since there was no apparent risk of collision until the M.'s sudden change of course, and the F., as soon as this was perceptible, stopped, and backed strong.

In Admiralty. Libel for damages.
*Geo. A. Black,* for libelants.
*B. D. Silliman,* for claimant.

BROWN, J. At about half past 8 o'clock in the morning of April 13, 1886, the libelant's side-wheel passenger steamer Morrisania, in making

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

her trip from Harlem to pier 22, East river, just above Fulton ferry on the New York side, came in collision with the ferry-boat Farragut, which was crossing the Fulton ferry from New York to Brooklyn. The tide was strong ebb. The Farragut had got about two-thirds across the river towards the Brooklyn shore, and was heading nearly straight up river, when her bows struck the port side of the Morrisania at an angle of about 45 degrees. The place of collision is most nearly fixed by Mr. Delaney, who saw the collision from the gateway of the Annex slip, which is immediately below the Farragut's slip on the Brooklyn side. Above the Brooklyn bridge the Morrisania had crossed to within a few hundred feet of the Brooklyn shore, and come under the bridge probably not over 400 feet distant from the Brooklyn abutment, heading about straight down river, and designing to round to against the ebb-tide, so as to land her passengers at pier 22 on the New York side. Such was the usual and proper mode of landing upon the strong ebb. Before the Morrisania reached the bridge she was seen by the pilot of the Farragut, who was then about 1,200 feet below the bridge, and who gave a signal of two whistles, designed, as he alleged, for the Morrisania. The witnesses for the Morrisania testify that a tug-boat was at that time crossing the bow of the Farragut towards the Brooklyn shore, and that the tug-boat answered the Farragut's two whistles with a similar signal, and that they understood that those signals had been designed as signals between those boats. The witnesses of the Farragut say that the tug-boat was not in a situation to require signals to be given to her, and that none were given to her; but that, getting no answer from the Morrisania, they shortly afterwards gave her a second signal of two whistles; that very soon thereafter the Morrisania was perceived to be sheering towards the New York shore, and at the same time a signal of one whistle was received from her; whereupon the Farragut's engines were reversed, as soon as possible, and that at the moment of collision she was under sternway. The witnesses for the Morrisania state that after the first two signals of two blasts each between the Farragut and the tug, the Morrisania, when a little below the bridge, gave a signal of one whistle to the Farragut, and put her wheel hard a-port; that the Farragut answered immediately with a signal of two whistles; that the Morrisania then slowed and stopped her engines, and blew another signal of one whistle, and that the Farragut continued to come on until within a length, when she stopped and backed; that at the last signal of one whistle the boats were estimated to be about 100 yards apart, and at the Morrisania's first whistle, from 300 to 400 yards. Taking into account the strong ebb, the Morrisania was making about twice the speed by land that the Farragut was making. The place of collision being only about 600 feet below the bridge, and the Morrisania's first signal being given when she was somewhat below the bridge, the two boats could not have been more than about 250 yards apart at the Morrisania's first signal, the Farragut being at least 150 yards below her slip. The mate of the Morrisania says that the latter was already swinging to starboard under a port wheel, having the Farragut nearly ahead, and it is clear upon all the testimony that as the

Morrisania passed under the bridge, before she whistled, she was from 200 to 300 feet nearer to the Brooklyn shore than the Farragut, and that each then had the other on her own starboard hand, the one heading nearly straight up river, the other nearly straight down.

1. Upon the foregoing facts, the whole blame for the collision, in my judgment, must rest with the Morrisania. There was nothing in the way to prevent the boats from passing each other starboard to starboard, by keeping the directions they had when the Morrisania was under the bridge, and not more than 400 or 500 yards distant from the Farragut. There was at that time no risk of collision, as each was heading so as to clear the other without change of course, and the Farragut did not need to make her swing towards her slip so soon as to interfere with the Morrisania's course to round astern of her. In this respect the case differs from that of *The John S. Darcy*, 29 Fed. Rep. 644. The collision was brought about by the Morrisania's swinging to starboard under a port wheel to cross the Farragut's bows. There was no necessity for this dangerous maneuver. She could have rounded to and made her wharf on the New York shore just as well by keeping on her course between the Farragut and the Brooklyn shore, so as to round to astern of the Farragut. Nothing but a fixed and well-known custom to pass ahead of ferry-boats in the situation of the Farragut could warrant the Morrisania, under such circumstances, in attempting to pass the Farragut's bows, or require the latter to give way. The evidence does not establish any such custom, even if such a dangerous practice, if established, could be upheld as lawful. The Morrisania, moreover, if designing to cross ahead of the Farragut, was bound to give a signal indicating her intention much earlier than she did. Her witnesses estimate the distance when she signaled at only 300 or 400 yards, while the proof, I think, shows that they were not at the time of her first signal over 250 yards apart. This was far less than the inspector's rules require, and far less than was practicable. The Morrisania had no right, under the circumstances, to change her course, and cross the Farragut's bows, unless she could do so safely, and without obstructing the Farragut's course. The result shows that the Morrisania was not only wholly unable to do so, but that the collision occurred even though the Farragut stopped and backed considerably, if she did not get actual sternway.

2. The Farragut, so far as I can see, did all that she was called on to do to avoid the collision. She had no reason to apprehend any danger until the Morrisania swung to starboard. Before that the Farragut, according to her own testimony, had twice signaled to the Morrisania, the first signal being before the latter had reached the bridge. It was doubtless the duty of the Farragut to stop and back as soon as she had reason to believe that the Morrisania would not keep to the eastward, and was meaning to cross her track. But as the maneuver of the Morrisania in swinging to starboard across the Farragut's bows was unjustifiable, and was not to be expected, and as the collision was primarily brought on by her wrongful maneuver, before the Farragut can be held, it must appear with reasonable clearness and certainty that the Farragut did not

stop and back as soon as the determination of the Morrisania to cross her bows was plain. The proof does not, I think, establish this point. The testimony of the officers of the Farragut is that they stopped and backed instantly, as soon as the swing of the Morrisania was perceived, and there is no indication that they were not properly watching her movements. The Morrisania obeys her helm quickly. The space within which her change was made was very short. The time must have been brief, prob- ably hardly more than twenty or thirty seconds; and nevertheless the Farragut got five or six revolutions backward. I cannot find, therefore, on her part any negligence or want of promptness in the observance of the rules as soon as the risk of collision was discernible. *The Greenpoint,* 31 Fed. Rep. 231; *The John S. Darcy,* 29 Fed. Rep. 644. The libel is dismissed, with costs.